JUDGE FAILLA

United States District Courthouse
For the Southern District of New York

**18 CV 00957**

Yashua ank bey el,
c/o YASHUA ANK BEY EL. Estate
MOORISH SCIENCE TEMPLE
And the family of Moors,
~ 421 8ᵗʰ Ave , New York , New York , [10001]
Claimant / Complainant
914 363 - 0828
**Plaintiff**

vs

CITIMORTGAGE INC.

ROSICKI, ROSICKI, & ASSOCIATES P.C. )

MERS.                    **Defendants,**
2 Summit court suite 301
Fishkill, New York, 12524

Miscellaneous Case No._____

FILED UNDER SEAL PURSUANT TO

31 U.S.C.  § 3730(b)(I)

COMPLAINT FOR VIOLATIONS OF
THE FALSE CLAIMS ACT

JURY TRIAL DEMANDED

## COMPLAINT

Yashua Ank Bey El brings this qui tam action; pursuant to 31 USC § 3729  et seq, this Complaint is to be filed *in camera* and **under seal,** and is to remain under seal for a period  of at least sixty days and shall not be served on Defendants until the Court so orders. This suit is not based on prior public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit or investigation; in a Government Accountability Office or Auditor General's report, hearing, audit, investigation; in the news media; or in any other location as the term "publicly disclosed is defined in 31 U.S.C. § 3730, but rather information from Realtor. In the alternative, to the extent there has been a public disclosure unknown to Realtor, he is an original source under the aforementioned statute. As more fully set forth in this Complaint, Yashua Ank Bey El has direct and independent knowledge of the information on which the allegations herein are based, and witnessed directly the fraudulent actions and representations by the Defendants against the United States, its departments or agents. (See Exhibit A Securitization Audit and Exhibit B Affidavit)

Further, the United States Government may elect to intervene and proceed with the action within the sixty day time frame after it receives both the Complaint and the material evidence submitted to it, and related causes of action, on the behalf of the United States of America, against CITIMORTGAGE, INC, ROSICKI, ROSICKI & ASSOCIATES P.C., MERS and alleging as follows starting in the Introduction which follows Jurisdiction and Venue.

**JURISDICTION AND VENUE**   28 U. S. C. § 1332
31 U. S. C. § 3730 (b)(c)(i)

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.0 § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. § § 3729 and 3 73 0. Plaintiff establishes subject matter jurisdiction under 28 U.S.C. § 3730(b). Under 31 U.S.C. § 3730 (e), there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint for which

Yashua Ank Bey El is not an "original source," additionally Defendants and each of them may be found in the District and transact business in this District as set forth above. Venue is proper in this District Court pursuant to 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a) because Defendants are found, transact business, and committed the acts alleged herein and proscribed by 31 U.S.0 § 3729 in this District. Defendant's actions in the categorization, underwriting and sale of mortgages to the Entities, to the United States or its departments or agents are continuous and systematic, and substantially occurred or continue to occur in the State of NEW YORK.

## INTRODUCTION

This is a qui tam action under the False Claims Act ("FCA"), the Racketeer Influenced & Corrupt Organization Act ("RICO"), the Freedom of Information Act ("FOIA") 5 USC § 552, the Fraud Enforcement and Recovery Act ("FERA"), the Truth in Lending Act ("TILA"), the American Recovery and Reinvestment Act ("ARRA"), and the Helping Families Save Their Homes Act; brought by Relator Kimmy R Cathey, to recover treble damages and civil penalties under the False Claims Act, as amended, 31 U.S.C. §§ 3729 *et seq.* arising from fraud on the Court 18 USC § 1957, 8 USC § 1324c., the Federal National Mortgage Association (commonly referred to and referred to herein as "Fannie Mae"), the Generally Accepted Accounting Principles ("GAAP") 12 USC § 183 In, Tax Fraud, the Troubled Asset Relief Program ("TARP") 12 USC Chapter 52, Federal Home Loan Mortgage Corporation (commonly referred to and referred to herein as "Freddie Mac") the United States Department of Housing and Urban Development

("HUD"), collusion 18 Usc § 371, conspiracy to defraud the United States 18 Usc § 286 and its citizens, racketeering 18 U.S.C. §§ 1961-1968 and theft by deception 18 usc § 1028 in connection with Defendants residential mortgage lending business practices.

The aforementioned Defendants have purposely collaborated to create Mortgage "vehicles" to exploit the ignorance of the American people concurrently utilizing those same vehicles to take advantage of the trust of the United States Government and exploit loopholes and weakness of the established financial system. These white collar, civil

ico racketeering collaborations were not accidents but maliciously manufactured, and designed for exorbitant financial gain at the expense of its victims; with no care nor concern for the ramifications to the economy (with trillions of dollars stolen), economic system or persons they would affect. Realtor I Yashua Ank Bey El is a citizen who has first hand experience of the impact of the Defendants fraudulent actions as a victim of foreclosure due to fraud upon the court (See Exhibit A - Mortgage Securitization Audit and Exhibit B Affidavit).

The fraud on the court denies the public interest, thwarts the FOIA, transparency as the requested court approval of settlements in which the Defendants resolve the serious allegations of fraud brought against them "without admitting or denying the allegations of the complaint. "To this end, each of the proposed consent Judgments now presented to this court is accompanied by a formal written "consent" of the defendant agreeing, pursuant to 17 C.F.R § 205.5, "not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis. ""This might be defensible if all that were involved was a private dispute between private parties. But here an agency of the United States is saying, in effect, "Although we claim that these defendants have done terrible things, they refuse to admit it and we do not propose to prove it, but will simply resort to gagging their right to deny it. ""The disservice to the public inherent in such a practice is palpable. Confronted with the same choice, the United States Department of Justice has long since rejected allowing defendants, except in the very most unusual circumstances, to enter into pleas of *nolo contendere*, by which a defendant accepts a guilty plea to a

criminal charge without admitting or denying the allegations. *See U.S.* Dept of Justice, U.S. Attorneys' Manual § 9-16.010 (2008) ("United States Attorneys may not consent to a plea of *nolo contendere* except in the most unusual circumstances and only after a recommendation for doing so has been approved by the Assistant Attorney General responsible for the subject matter or by the Associate Attorney General, Deputy Attorney General or the Attorney General."); U.S. Dep't of Justice, U.S. Attorneys' Manual § *9-27.500 (2006)* ("The attorney for the government should oppose the acceptance of a plea of *nolo contendere* unless the Assistant Attorney General with supervisory responsibility over the subject matter concludes that the circumstances of the case are so unusual that acceptance of such a plea would be in the public interest."). As the great U.S. Attorney General Herbert Brownell, Jr. stated in a 1953 departmental directive:

[A] person permitted to plead *nolo contendere* admits his guilt for the purpose of imposing punishment for his acts and yet, for all other purposes, and as far as the public is concerned, persists in his denial of wrongdoing. It is no wonder that the public regards consent to such a plea by the Government as an admission that it has only a technical case at most and that the whole proceeding was just a fiasco.

*See* Comment, U.S. Dep't of Justice, U.S. Attorneys' Manual § 9-27.500 (2006).

Moreover, as a practical matter, it appears that defendants who enter into consent judgments where they formally state, with the S.E.C.T's full consent, that they neither admit nor deny the allegations of the complaint, thereafter have no difficulty getting the word out that they are still denying the allegations, notwithstanding their agreement not to "make any public statement" denying the allegations. Reacting to the equivocal press releases issued by some defendants after such settlements, S.E.C. Commissioner Luis A. Aguilar has expressed the "hope that this revisionist history in press releases will be a relic of the past," but added "If not, it may be worth revisiting the Commission's practice of routinely accepting settlements from defendants who agree to sanctions 'without admitting or denying' the misconduct." *See* Commissioner Luis A. Aguilar, Speech by SEC Commissioner: Setting Forth Aspirations for 2011, Address to Practicing Law Institute's SEC Speaks in 2011 (Feb. 4, 2011)."

These calculated well executed actions of mortgage and securities fraud by the Defendants is compounded by their fraud upon the courts; as they continue to falsify documents make false claims against the Government (by omission and commission), collect government funded insurance policies, move for foreclosure proceedings and if caught agree to terms with the governing agencies while never admitting guilt, hence they are able to continue to conduct business at usual; subsequently denying home owning American citizens their right to due process and justice all while making the Government and judiciary complicit and accomplices in the largest Mortgage and Securities fraud in the history of this great country. These same settlements and consent judgments thwart the very foundation and fabric of the FOIA, by denying full disclosure or establishing precedent, therefore society continues to be in the dark, people are continually loosing their homes to a fraudulent racketeering machine

## ALLEGATIONS

New York State Trust Law Statutes state: Unless an asset is transferred into a lifetime trust, the asset does not become trust property. ( NY Estates, Powers and Trust Law § 7-1.18). A trustee's act that is contrary to the trust agreement is void.

(NY Estates, Powers and Trust Law § 7-2.4). If the investment trust that ostensibly owns the mortgage obligation is a REMIC, the trustee, the QSPE, and the other parties servicing the trust, have no legal or equitable interest in the securitized mortgages. Therefore, any servicer (i.e. CITIMORTGAGE, INC, ROSICKI, ROSICKI & ASSOCISATES P.C., ) who alleges that they have the right, or that they have been assigned the right, to claim that they are the agent for the holder of the note for purposes of standing to bring an action of foreclosure, are stating a legal impossibility. In light of this, by what authority can you show that you can administer a lawful foreclosure? in order for the investment entity to be a REMIC (in other words, in order for the entity to be able to qualify for the single taxable event as a pass through entity), all interest in the mortgage is supposed to be transferred forward to the certificate holders. Well, in fact, *such a transfer never occurs*. Either that is the case, or the parties who state that they have a right to foreclose on a securitized note are not being truthful when they present themselves as the real party in interest. In any case, they cannot have it both ways. The servicer cannot claim to hold legal and/or equitable interest in the mortgages held in the name of an investment trust that also provides the (REMIC) pass through tax benefit to

its investors. Does the Master Servicing Agreement - made public through its filing with the Securities and Exchange Commission - show that the entity is a REMIC?

If so, the note has become unenforceable because the unnamed parties who are receiving the pretax income from the entity are the real parties in interest. They hold the legal and/or equitable interest in the mortgages held, but they do not have the ability to foreclose on any one individual mortgage because the mortgages held by the REMIC have all been bundled into one big income-producing unit. Simply stated, the vast majority of litigants - and judges - have not been properly informed as to the true nature of this type of transaction. This is said not to insult anyone. Quite to the contrary, this is just to say that the true identity of the real party in interest is able to be obfuscated in the labyrinth of the securitization scheme such that whoever steps forward claiming to be that party and showing documentation appearing to be legitimate is assumed to have standing, and there are too few knowledgeable challengers of that mistaken assumption. So much more so in the case of the "layman" homeowner like Relator Kenny Registry. Christopher Celestine

Most homeowners have no idea that the transaction being referred to as a debt and as an obligation that they must pay or be subject to foreclosure, has actually already been paid. And not just once! In cases where a default has been alleged, the securitized note has likely already been satisfied (not just sold and/or assigned) four or five times over. Securitization is a product of the genius of capitalism. As long as profits continued to be made, all participants did very well from this creative new financial arrangement, and bliss reigned supreme. Then the other shoe dropped. There is a mortgage default crisis underway in the United States and a credit crisis caused by toxic assets in the secondary mortgage market. Goldman Sachs estimates that, starting at the end of the last quarter of 2008 through 2014, 13 million foreclosures will occur. The Center for Responsible Lending, based on industry data, predicted 2.4 million foreclosures occurred in 2009, and that there

would be a total of 9 million foreclosures between 2009 and 2012. At the end of the first quarter of 2009, more than 2 million houses were in foreclosure. Mortgage Bankers' Ass'n, Nat'l Delinquency Survey Q109 at 4 (2009) reporting that 3.85% of 44,979,733, or 1.7 million, these spiraling foreclosures weaken the entire economy and devastate the communities in which they are concentrated. According to The Subprime Lending Crisis: The Economic Impact on Wealth, Property Values and Tax Revenues, and How We Got Here, foreclosed home owners are projected to lose $71 billion due to foreclosure crisis, while neighbors will lose $32 billion, and state and local governments will lose $917 million in property tax revenue.

## SECURITIZATION AND TAX FRAUD

In the mortgage securitization process, collateralized securities are issued by, and receive payments from, mortgages collected in a collateralized mortgage pool. The collateralized mortgage pool is treated as a trust. This trust is organized as a special purpose vehicle ("SPV") and a qualified special purpose entity ("QSPE") which receives special tax treatment. The SPV is organized by the securitized so that the assets of the SPV are shielded from the creditors of the securitized and the parties who manage it. This shielding is described as making the assets "bankruptcy remote". To avoid double taxation of both the trust and the certificate holders, mortgages are held in Real Estate Mortgage Investment Conduits ("REMICS"). To qualify for the single taxable event, all interest in the mortgage is supposed to be transferred forward to the certificate holders. The legal basis of REMICs was established by the Tax Reform Act of 1986 (100 Stat.

The principal advantage of forming a REMIC for the sale of mortgage-backed securities 2085, 26 U.S.C.A. §§ 47, 1042), which eliminated double taxation from these securities.

is that REMIC's are treated as pass-through vehicles for tax purposes helping avoid double-taxation. For instance, in most mortgage-backed securitizations, the owner of a pool of mortgage loans (usually the Sponsor or Master Servicer) sells and transfers such loans to a QSPE, usually a trust, that is designed specifically to qualify as a REMIC, and, simultaneously, the QSPE issues securities that are backed by cash flows generated from the transferred assets to investors in order to pay for the loans along with a certain return. If the special purpose entity, or the assets transferred, qualify as a REMIC, then any income of the QSPE is "passed through" and, therefore, not taxable until the income reaches the holders of the REMIC, also known as beneficiaries of the REMIC trust.

Accordingly, the trustee, the QSPE, and the other parties servicing the trust, *have no legal or equitable interest in the securitized mortgages*. Therefore, any servicer who alleges that they are, or that they have the right, or have been assigned the right, to claim that they are the agent for the holder of the note for purposes of standing to bring an action of foreclosure, are stating a legal impossibility. Any argument containing such an allegation would be a false assertion. Of course, that is exactly what the servicer of a securitized mortgage that is purported to be in default claims. The same is the case when a lender makes that same claim. The party shown as "Lender" on the mortgage note was instrumental in the sale and issuance of the certificate to certificate holders, which means they knew that they were not any longer the holder of the note.

The QSPE is a weak repository and is not engaged in active management of the assets. So, a servicing agent is appointed. Moreover, *all legal and equitable interest in the*

Compliance with the REMIC and insulating the trust assets from creditors of third parties *mortgages are required by the REMIC to be passed through to the certificate holders*.

(who create or service the trust) leads to unilateral restructuring of the terms and conditions of the original note and mortgage. The above fact, and the enormous implications of it, cannot be more emphatically stressed. A typical mortgage pool consists of anywhere from 2,000 to 5,000 loans. This represents millions of dollars in cash flow payments each month from a servicer (receiving payments from borrowers) to a REMIC (QSPE) with the cash flow "passing through", tax-free, to the trust (REMIC). Those proceeds are not taxed until received as income to the investors. Only the investors have to pay taxes on the payments of mortgage interest received.

The taxes a trust would have to pay on 30, 50, or 100 million dollars per year if this "pass through" taxation benefit didn't exist would be substantial and it would, subsequently, lower the value of the certificates to the investors, the true beneficiaries of these trusts. Worse, what would be the case if a trust that was organized in February 2005 were found to have violated the REMIC guidelines outlined in the Internal Revenue Code? At $4 million per month in cash flow, there would arise over $200 million in income that would now be considered taxable. It is worth repeating that in order for one of these investment trusts to qualify for the "pass through" tax benefit of a REMIC (in other words, to be able to qualify to be

able to be referred to as a REMIC), *ALL LEGAL AND EQUITABLE INTEREST IN THE MORTGAGES HELD IN' THE NAME OF THE TR UST ARE VESTED IN THE INVESTORS*, not in anyone else *A TANY TIME*. If legal and/or equitable interest in the mortgages held in the name of the trust are claimed by anyone other than the investors, those that are making those claims are either defrauding the investors, or the homeowners & courts, or both. So, if the trust, or a servicer, or a trustee, acting on behalf of the trust, is found to have violated the very strict REMIC guidelines (put in place in order to

qualify as a REMIC), the "pass through" tax status of the REMIC can be revoked. This, of course, would be the equivalent of financial Armageddon for the trust and its investors. A REMIC can be structured as an entity (i.e., partnership, corporation, or trust) or simply as a segregated pool of assets, so long as the entity or pool meets certain requirements regarding the composition of assets and the nature of the investors' interests. No tax is imposed at the REMIC level. To qualify as a REMIC, all of the interests in the REMIC must consist of one or more classes of "regular interests" and a single class of "residual interests." Regular interests can be issued in the form of debt, stock, partnership *interests, or trust certificates, or any other form of securities, but* must provide the holder the unconditional right to receive a specified principal amount and interest payments.

REMIC regular interests are treated as debt for federal tax purposes. A residual interest in a REMIC, which is any REMIC interest other than a regular interest, is, on the other hand, taxable as an equity interest. According to Section 860 of the Internal Revenue Code, in order for an investment entity to qualify as a REMIC, all steps in the "contribution" and transfer process (of the notes) must be true and complete sales between the parties and must be accomplished within the three month time limit from the date of "startup" of the entity. Therefore, every transfer of the note(s) must be a true purchase and sale, and, consequently the note must be endorsed from one entity to another. Any mortgage note/asset identified for inclusion in an entity seeking a REMIC status must be sold into the entity within the three month time period calculated from the official startup day of the REMIC. Before securitization, the holder of an enforceable note has a financial responsibility for any possible losses that may occur arising from a possible default, which means that holder also has the authority to take steps to avoid any  such losses (the right to foreclose). Securitization, however, effectively severs any such financial responsibility for losses from the authority to incur or avoid those losses. With securitization the mortgage is converted into something different from what was originally represented to the homeowner. For one thing, since the party making the decision to foreclose does not actually hold any legal or equitable interest in any securitized mortgage, they have not realized any loss or damages resulting from the purported default. Therefore, it also follows that the foreclosing party avoids the liability which could result if a class of certificate holders claimed wrongful injury resulting from a modification made to achieve an alternate dispute resolution. Securitization also makes

the mortgage and note unalienable. The reason is simple: once certificates have been issued, the note cannot be transferred, sold or conveyed; at least not in the sense that such a transfer, sale, or conveyance should be considered lawful, legal, and legitimate. This is because the securitized note forever changes the nature of that instrument in an irreversible way, much in the same way that individual pineapples and individual oranges can never be extracted, in their "whole" form, from a pineapple orange smoothie once they've been dropped in the blender and the blending takes place. It might appear that the inability to alienate the note has no adverse consequences for the debtor, but recent history disproves this notion. Several legislative and executive efforts to pursue alternate dispute resolution and to provide financial relief to distressed homeowners have been thwarted by the inability of the United States government to buy securitized mortgages without purchasing most of the certificates issued. An SPV cannot sell any individual mortgage because individual mortgages are not held individually by the certificate holders; the thousands of mortgages held in the name of the REMIC are owned

collectively by the certificate holders. Likewise, the certificate holders cannot sell the mortgages. All the *certificate* holders have are the securities, each of which can be publicly traded. The certificate holders are, in no sense, holders of any specific individual note and have no legal or beneficial interest in any specific individual note. The certificate holders do not each hold undivided fractional interests in a note which, added together, total 100%. The certificate holders also are not the assignees of one or more specific installment payments made pursuant to the note. For the certificate holder, there is no note. A certificate holder does not look to a specific note for their investment's income payment. Instead, the certificate holder holds a security similar to a bond with specific defined payments. The issuer of trust certificates is selling segments of cash flow.

*The Servicer, Sub servicer, or some other party (counterparty) likely made a payment to the party who allegedly owns the purported debt obligation. This payment, if made, was intended to cover sums that are alleged to be in default. Therefore, the party who allegedly owns the purported debt obligation has, by virtue of that payment, not been damaged in any way. Therefore, if any sums have thusly been paid, how is it being truthfully stated that a default has occurred?*

## THE FALSE CLAIMS ACT

The False Claims Act provides liability for any person who (I) who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval", or (ii) who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" 31 U.S.c. § 3729(a)(I)(A)-(B). The False Claims Act further provides that any person who violates the Act: "is liable to the United States Government for a civil penalty of not less than *[$5,500]* and not more than *[$11,000]*, plus 3 times the amount of damages which the Government sustains because of the act of that person..."

31 U.S.C. § 3729(a); see 28 C.F.R. § 85.3(a)(9).

**SEE ATTACHMENTS EXHIBIT A1-A39**

**PRAYER**

WHEREFORE, the Claimant / Plaintiff respectfully request that judgment be entered in its favor and against all Defendants as follows:

1. That defendants cease and desist from violating 31 U.S.C. § 3729 et seq.;

2. That Court enters judgments against defendants in an amount equal to three times the amount of damages the United States has sustained due to the negligent actions of the Defendants, plus a civil penalty of not less than *$5,500* and not more than $11,000 for each violation of 31 U.S.C. § 3729;

3. That Realtor / Plaintiff is awarded his home with free and clear title due to fraud on the court per Federal Rules of Civil Procedure 60(d)(3) which is not time barred and intended to protect the judicial process;

4. That Realtor be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act;

5. That Realtor be awarded all costs of this action, including attorney's fees, cost, and expenses pursuant to 31 U.S.0 § 3730(d); and

6. That the United States and Realtor / Plaintiff be granted all such relief as the court deems just and proper.

Respectfully submitted,

By:

Yashua Ank Bey El,
c/o YASHUA ANK BEY EL  Estate
MOORISH SCIENCE TEMPLE
THE FAMILY OF MOORS

STATE OF NEW YORK COUNTY OF NEW YORK COUNTY

AFFIDAVIT OF TRUTH

Sworn to (or affirmed) and subscribed before me that all the

information I Yashua Ank Bel El herein is true correct and complete.

Yashua - Ank Bey: El:

STATE OF NEW YORK
COUNTY OF NEW YORK } SS.

This day of , 2018, By

Notary public

CUI YING LI
Notary Public, State of New York
No. 01LI6303092
Qualified in New York County
My Commission Exp. Commission Expires May 12, 20_18

SEE ATTACHMENTS EXHIBIT A1-A39

PROOF OF SERVICE This is to certify that the within and foregoing

AFFIDAVIT OF TRUTH was deposited into the U.S. Mail for

service upon the following:

Defendants:

CITIMORTGAGE INC., 14700 Citicorp Dr, Hagerstown, MD 21740 ,

MERS. PO Box 2026, Flint, MI 48501-2026,

ROSICKI, ROSICKI, & ASSOCIATES   P.C. ,

2 Summit court suite 301 , Fishskill, New York, 12524

ROSICKI, ROSICKI, & ASSOCIATES   P.C. ,

2 Summit court suite 301 , Fishskill, New York, 12524

CERTIFIED MAIL  OR EXPRESS MAIL No. _____

_____ , _____

JUDGE FAILLA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No. 18 CV 00957

Yashua ank bey el ,
c/o YASHUA ANK BEY EL  Estate
MOORISH SCIENCE TEMPLE
And the family of Moors,
~ 421 8ᵗʰ Ave , New York , New York , [10001]
Claimant / Complainant
**Plaintiff**

vs

CITIMORTGAGE INC.

ROSICKI, ROSICKI, & ASSOCIATES  P.C. )

MERS.          **Defendants,**
2 Summit court suite 301
Fishkill, New York, 12524

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE A Federal case has been filed on this case in the private

**FILED UNDER SEAL PURSUANT TO 31 U.S.C.   § 3730b(l),**

Clerk: Please FILE FOR RECORD

WHEN RECORDED RETURN TO
In Care of:
**Yashua Ank Bey El**
1053 Nostrand Avenue
Brooklyn, New York [11225]

Recorders Use:

---

Space above is for recording only.

## QUIT CLAIM DEED

KNOW ALL MEN BY THESE PRESENTS: That, **Yashua Ank Bey El**, a single man, whose address is P.O. BOX 198 NEW YORK, NEW YORK [10001]

**For and in consideration** of **Twenty one ($21) and 00/100's U.S. Minted Silver Dollar Coin Species of Lawful Money** and no other goods or no valuable consideration to Them in hand paid by **Yashua Ank Bey El**, P.O. BOX 198 NEW YORK, NEW YORK [10001] a private sovereign Lawful Man, an Ancient One of the Indigenous Aboriginal Muurs/Moors a Private Sovereign of the Land and of the Original Jurisdiction of the united States of America, Original Rules and Treaties; Beneficiary of Vast Estate Expressed Trust Document # 10105905, Bk 521, Pg 579 ; Resolution 1099-14330525252013 does severally certify and declare as follows: and; whereof accepted and is hereby confessed and acknowledged, have remised, released, conveyed and forever quitclaimed and by these presents do release, convey and forever quitclaim unto the said:

Described parcel commonly known as 393 Montauk Ave.: **Lot 78 Block 4456**, Borough of Brooklyn, Kings County, New York, according to the plat thereof recorded in Office of City Register of the City of New York, Filing Number 2010000429200; Beginning at a point distant 95 feet 10-1/4 inches southerly from the corner formed by the intersection of the northerly side of Dumont Avenue and the easterly side of Montauk Ave. RUNNING THENCE easterly at right angles to Montauk Avenue and part of the distance through a party wall 100 feet: THENCE southerly parallel with Montauk Avenue 41 feet; THENCE westerly at right angles to Montauk Avenue 100 feet to the easterly side of Montauk Avenue; THENCE northerly alone the easterly side Montauk Avenue 41 feet to the point or place of BEGINNING.

I, Me, My, **Yashua Ank Bey El** ; and do for My heirs and assigns, forever, all such right, title, interest, of said tract of land and to have and to hold the said tract of land with the appurtenances thereof, unto said assignee and the heirs and assignees of said assignees forever; subject to any vested and accrued water rights for agricultural, mining, manufacturing and any other purposes used in connection with such rights as may be recognized and acknowledged by the local customs and the Common Law as recognized in the Constitution of the State of New York and the Constitution of the United States, Article 4, Section 3, Clause 2, as We have or ought to have to all the described premises, to wit: Parcel of Land herein assign:

This instrument was prepared by: Tehuti El
12711 E. Jefferson unit 15537
Detroit, Michigan [48230]

DATED this 03 day of January , 2018.

*El Yashua-Ank-Bey*
**Yashua Ank Bey El**

**Exhibits**

(A) Declaration of Land Patent
(B) Notice in effect of Land
Patent, Land and Title
Transfer
(Ca-d) Certificates of Entitlement
(D) Assignee's Declaration of
Grant
(E-El) Memorandum of Law

**EXEMPT UNDER**

Title 11, Chapter 21, Administrative Code
Tax Law Section 1201 (b)

**TAX IMMUNED**

State of New York          )
                           ) ss.
County of Kings            )

On this day personally appeared before me **Yashua Ank Bey El**, to me known to be the individual described in and who executed the within and foregoing instrument, and acknowledged that he signed the same as his free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this 3d day of January , 2018.

_____
Notary Public
Commission Expires Nov. 21, 2020
seal

**NO REVENUE ATTACHED**

CHERYL ANN MABRY
Notary Public State of New York
Registration No. 01MA6350859
Kings County
Certificate Filed in New York County
My Commission Expires November 21, 20__

Exhibit A

Recorders Use:

Clerk: Please FILE FOR RECORD
**GRANTOR/GRANTEE INDEX ONLY**
WHEN RECORDED PLEASE RETURN TO
Commanded by; Assign:
**Yashua Ank Bey El**
1053 Nostrand Avenue
Brooklyn, [11225] Republic of New York

Space above is for recording only

## DECLARATION  OF  LAND  PATENT

Original Patentee: Henry A. Reynolds

Know all ben by these presents; **Yashua Ank Bey El**, Lawful Man, an Ancient One of the Indigenous Aboriginal Muurs/Moors a Private Sovereign of the Land and of the Original Jurisdiction of the united States of America, Original Rules and Treaties, Beneficiary of Vast Estate Expressed Trust Document # 10105905, Bk 521. Pg 579: Resolution 1099-1430525012 does severally certify and declare as follows:

That I bring up this Land Patent in My name.

LEGAL DESCRIPTION: The Timber to be cut and the extracted collateral transmitted through lot 78 of the Land embraced in the annexed Block 4456 of The land embraced in the Borough of Brooklyn, Kings County."

Beginning at a point distant 95 feet 10-1/4 inches southerly from the corner formed by the intersection of the northerly side of Dumont Avenue and the easterly side of Montauk Ave.
RUNNING THENCE easterly at right angles to Montauk Avenue and part of the distance through a party wall 100 feet: THENCE southerly parallel with Montauk Avenue 41 feet; THENCE westerly at right angles to Montauk Avenue 100 feet to the easterly side of Montauk Avenue; THENCE northerly alone the easterly side Montauk Avenue 41 feet to the point or place of BEGINNING.

The character of said property so sought to be patented and legally described and referred to as filed in the CITY REGISTER OF THE CITY OF NEW YORK; file # 201000429200 Also: attached Attachment "A" legal/lawful description to be patented and it is the only way to perfect instrument FILED FOR RECORD as the Title is now had in My name.  Wilcox v Jackson (1839) 13 Pet.  (US) 498 10 L.Ed. 264; The register 9 Wall (US) 575, 19 L.Ed. 681; Wineman v Gastrell 54 Fed 819, 4 CCA 596, 2 U.S. Ap. 581.  Also: All questions of fact decided by the general land office are binding everywhere and injunctions and mandamus proceedings will not lie against it. Lichfield v the Register and Receiver 9 Wall. US 575 19 L.Ed. 681.

Exhibit B

NOTICE IN EFFECT OF LAND PATENT

A grant of land is a public law standing on the statute books of the state, and in notice to every subsequent purchaser under any conflicting sale made afterward.  Wineman v Gastrell ibid.

Also; Where the United States has parted with title by a patent Lawfully issued and upon surveys Lawfully made by itself and approved by the proper department, the Title so granted cannot be impaired by the subsequent survey made by the government [federal or state] for its own purposes. Cage v Danks 13 La.Ann. 128.

LAND AND TITLE TRANSFER

The existing system of land transfers is a long and tedious process involving the observance of many formalities and technicalities, a failure to observe any one of which may defeat title, even when these have been most carefully complied with, and where the title has been traced to its source, the purchaser must at his peril, there always being, in spite of the utmost care and expenditure, the possibility that his title may turn out bad. Yeakell Torrence System pp. 209.

This land, now patented, is FEE SIMPLE ABSOLUTE, as no one has followed the proper steps to assign Lawful Title as lawful successor in interest to all the rights, privileges, immunities, and appurtenances of whatsoever nature belonging unto the said Grantee as predecessor in interest to those property rights. This is the final Title and receipt of the above described land. See: Steel v St. Louis Smelting & Refining Co. 106 US. 417, 27 L.Ed. 226.

Done on this  03  day of  January , 2018.

_El Vashua-Ank-Bey_
Grantee / Sui juris

State of New York            )
                            ) solemnly affirming and subscribing
County of Kings  )

The foregoing DECLARATION OF LAND PATENT was acknowledged before me by:

This  3d  day of  January , 2018.

_Cheryl Mabry (seal)_
Witness my hand and official seal: _Nov 21, 2020_

My Commission Expires: _Nov 21, 2020_

Notary Public

Seal

CHERYL ANN MABRY
Notary Public State of New York
Registration No. 01MA6350859
Kings County
Certificate Filed in New York County
My Commission Expires November 21, 2020

Exhibit D

Clerk: Please FILE FOR RECORD
WHEN RECORDED RETURN TO
Commanded by; Assign:
**Yashua Ank Bey El**
1053 Nostrand Avenue
Brooklyn, New York [11225]

_____
Space above is for recording only

Recorders Use:

ASSIGNEE'S DECLARATION OF LAND GRANT
&
NOTICE OF PRE-EMPTION RIGHT
********

TO ALL THOSE, TO WHOM THESE PRESENTS SHALL COME, KNOW YE:
Pursuant to the Declaration of Independence 1776, the Treaty of Peace with Great Britain
(8 Stat. 80) known as the Treaty of Paris [1783], an Act of Congress [April 24, 1820], the
Oregon Treaty (9 Stat. 869 ) [June 15, 1846], the Homestead Act [1862], an Act of
Congress [1851] et seq [March 3,1891] and 43 USC Sections 57, 59 and 83; the recipient
hereof is mandated by Art. VI Sections 1, 2 and 3; Art. IV Sections 1, 2 cl. 1, 3 cl. 1 and
2, and Section 4; the 4th, 7th, 9th and 10th Amendments [U.S. Constitution 1781]; to
acknowledge Assignee's Declaration of Land Grant & Notice of Pre-emption Right,
prosecuted by authority of Art. III  Section 2 cl. 1,and 2, and enforced by
original/exclusive jurisdiction thereunder.

IT IS HEREBY ORDAINED AND ESTABLISHED BY ORDER OF LAW,

THAT: I the living sentinel being, lawful man, **Yashua Ank Bey El**, am Assignee in law
and bona fide subsequent purchaser by contract, of that certain legally described portion
of Land Granted under Treaty of Tordesillas and treaties thereafter, duly authorized to be
executed in pursuance of Supremacy of Treaty law, Citation and Constitutional mandate,
herein referenced, whereupon a duly authenticated true and correct legal description,
together with any/all hereditament, tenements, pre-emption rights, the LAWFUL and
VALUABLE CONSIDERATION for which is APPENDED hereto, and by reference,
incorporated herein, made a part hereof.

DISCLAIMER

ASSIGNEE'S SEIZEN IN DEED, AND LAWFUL ENTRY IS INCLUSIVE OF
SPECIFICALLY THAT CERTAIN LEGALLY DESCRIBED PORTION OF THE ORIGINAL
LAND , AND NOT THE WHOLE THEREOF, INCLUDING HEREDITANENT, TENEMENTS,
PRE EMPTION RIGHTS APPURTENANT THERETO. THE RECORDING OF THIS
INSTRUMENT SHALL NOT BE CONSTRUED TO DENY OR INFRINGE UPON ANY
OTHERS RIGHT TO CLAIM THE REMAINING PORTION THEREOF. ANY CHALLENGES
TO THE VALIDITY OF THIS DECLARATION & NOTICE ARE SUBJECT TO THE
LIMITATIONS REFERENCED HEREIN. ADDITIONALLY:  A COMMON COURTESY OF
SIXTY (60) DAYS IS STIPULATED FOR ANY CHALLENGES HERETO, OTHERWISE,
LACHES /ESTOPPEL SHALL FOREVER BAR THE SAME AGAINST SAID ALLODIAL
FREEHOLD ESTATE; ASSESSMENT LIEN THEORY TO THE CONTRARY (ORS 275.130),
ARE INCLUDED.

Exhibit E

Clerk: Please FILE FOR RECORD
**GRANTOR/GRANTEE INDEX ONLY**
WHEN RECORDED RETURN TO
Commanded by; Assign:
**Yashua Ank Bey El**
1053 Nostrand Avenue
Brooklyn, New York [11225]

_____
Space above is for filling only.

Recorders Use:

MEMORANDUM OF LAW ON ASSIGNEE'S STATUS, PRE-EMPTION RIGHT,
PRIVILEGE & IMMUNITY

1.) Assignee is a preambled de jure Freeholder & a Citizen of the united States of America by
virtue of his Republic/State Citizenship, cognizant the Preamble(s) of New York's
Constitution [ and U.S. Constitution (1781– 91), Dred Scott v. Sanford 19 How 393 [1857];
has never knowingly alienated his Republic/State Citizenship, Texas v. White, 7 Wall 700
[1868] under franchise of the declaratory 13th Amendment section 2, the 14th et seq
Amendments, USC Title XI Section 1101 (a) (1), (2) & (3), s.s. Act (1935) et seq; enjoys his
privileged status at law in accord with Art. IV Sections 1,2 cl. 1 & 2, 3 cl. 1 & 2 and Section
4 [ CONSTITUTION, 1781—91], Cole v. Cunningham 103 US 107, Fenn v. Holmes, 21
How 484 [1858] pursuant to an Act of Congress (February 14, 1859) admitting the Territory
of Oregon into the Union upon equal footing, full faith and credit, whereupon, Assignee is not
restrained by conventional disability to lawfully enter upon said premises, to have and to hold
the same (postliminium) unto his heirs and assigns forever, an ALLODIAL FREEHOLD
Estate at law, as a constituent sovereign member of the Posterity of "We the People".

Assignee is not a "person" and/or "taxpayer" defined by state/federal (law merchant)
statute; is not a resident alien or foreign corporation, USC Title XI et seq, 26 USC/IRC, 42
USC et seq, Long v. Rasmussen 281 F. 236, at page 238; is not a cestui que trust (beneficiary)
of the State of Oregon Inc., id act, a municipal corporation, and political subdivision of
Congress of the District of Columbia by reciprocal compacts, agreements, duties and/or
obligations.

2.) Acts of congress making notes of the United States, a legal tender do not apply to involuntary
contributions in the nature of taxes or assessments (fines, penalties, forfeitures) exacted under
State law, Hagar v. Land Reclamation District 108, 111 US 701 (S. Ct., 1884], Lewis v. U.S.,
680 F. 2d 1239 [1982] 12 USC 152, 31 USC 371; State's enjoined by Art. I Section 10 cl. 1
(U.S. Constitution, 1781—91], Oregon enjoined by Art. XI Section 1 (Oregon Constitution,
1857-59), Oregon's H.J.R. 13 (ex—post facto law) [May 21, 1973] and/or ultra vires H.J.R.
192, 31 USC 408 (a) [June 5, 1933] et seq 31 USC enactments to the contrary,
notwithstanding.

HENCE; The authority under which this instrument is executed emanates directly from the
Word of The Omnipotent, Most High Creators, Mother Nature and Universe in the name of
thy AmenRa, also as appears in the Holy scriptures (KJV) at: EXODUS 20:12,which edict
states: "Honor thy father and thy mother that thy days may be long upon the land which the
Creator the first giver of life. Thy Mother Nature and the Universe of giveth thee inalienable
rights to life, liberty and the pursuit of happiness on this land for an inheritance of these
inalienable rights, to possess it, for this is the first law with promise to uphold these
inalienable rights and true freedom . AmenRa."

3.) A Grant of land is a public law having standing on the statute books of the state, and is notice to
every subsequent purchaser under conflicting sale afterward, Wineman v. Grastrell 54
Fed 819, 4 CCA 596, 2 US App 581; Patent alone passes paramount legal Title to
Grantee, and his heirs or assign's forever, Wilcox v. Jackson 13 Pet 498, 10 L. Ed. 264
(1839); U.S. v. Stone 2 US 525, 17 L. Ed. 765; Where the U.S. has parted with Title by
Patent legally issued & surveys legally made by itself, approved by the proper
Department, Title so granted cannot be impaired by any subsequent survey by state
government for its own purpose, Cage v. Danks, 13 La Ann 128; stare decisis:

Summa Corp. v. California ex rel. State Lands Commission & City of Los Angeles 104, US
1754
(April 17, 1984) Yeakle, Torrens System 209; subsequent purchasers final certificate/receipt
acknowledging payment in full by Homesteader; Pre-emptor is not in legal effect a
conveyance of land,
U.S. v. Steenerson, 50 Fed 504, 1 C CA 552, 4 US App 332; There being a legal distinction
between a debt discharged and one extinguished at law, Stanek v. White, 172 Minn 390, 215
N.W.R. 781, 784.

Exhibit E1

4) A Land Patent is conclusive evidence that the Patentee has complied with the Acts of Congress [(Homestead Act) 1862] as concerns improvements on the land, etc., Jankins v. Gibson, 3 La Ann 203; Wilcox v. Jackson, supra; injunctions & mandamus will not lie against it, Litchfield v. The Register, 9 Wall 575, 19 L. Ed. 681; Ware v. Hylton 3 Dall (3 US 199) [1976]; Summa Corp., supra.

5) Title and Rights vested in original Patentee unto bona tide purchaser/assignee in law, will be protected, U.S. v. Debell, 227 F 760 [ CRSD, 1915]; State v. Hewitt Land Co. 74 Wash 573, 134 P 474 [1913]; 43 USC Sections 57, 59, 83 and 175; Congress restricted alienation of Homestead lands after conveyance by U.S. in fee simply, by providing no such lands shall become liable to satisfaction of debts contracted prior to issuance of Patent, USCA Art. IV Section 3 Cl. 2, and Ruddy v. Rossi, 248 US 104 [1918]; Lien assessment theory (Oregon, O.R.S. 275.130) to the contrary, notwithstanding, U.S. v. Schurz, 102 US 378; U.S. v Champaign County, Fed Supp 474 [1958]; Summa Corp., supra.

6) A Patent certificate, Patent issued, or confirmation made to an original Grantee or his legal representative embraces representative of the Grantee unto Assignee, by contract, as well in law, Hogan v. Page, 69 US 605, 17 1. Ed. 854; Where the issue is who has paramount legal Title, Patent issued by the U.S. is unassailable, Sanford v. Sanford, 139 US 642, 35 L. Ed. 290; Johnson v. Christen, 128 US 374, 32 L. ed. 412; Doe v Aiken , 31 Fed 393; Then, such land is not taxable by the State, Sargent v. Herrick & Stevens, 221 US 404, 55 L. Ed. 787; Lomas v. Pickering, 173 US 26, 43 L. Ed. 601; HENCE: "No State shall impair the obligation of contracts (U.S. Constitution, Art. I Section 10 cl. 1 (1781-91)"; Assignee's seizen in deed, lawful entry, exercised under the authority of Art. IV, supra, and Cole v. Cunningham, 103 US 107, against all the world, DROIT DROIT DOMINIUM JUS IN RE.

7) IMMUNITY FROM COLLATERAL ATTACK: Collins v. Bartlett, 44 Cal 371; Green v. Barker, 47 Neb 934, 66 NW 1032; Sawyer v. Brodle, 209 US 393, 52 L. Ed. 849; Penn v. Holmes and Sumea Corn. stare decisis, supra.

NEW YORK STATE )
                ) solemnly affirming and subscribing
KINGS COUNTY )

Yashua Ank Bey El, deposes and says that: I am the Declarant in the foregoing declaration of Land Patent; that I have read and know the contents thereof, and that the matters therein stated are true to my knowledge; and do state that the above court cites are true.

_____
El Yashua-Ank-Bey
Autograph of Yashua Ank Bey El

On 2d g January, 2018, before me, the undersigned, a Notary Public in and for said state, personally appeared Yashua Ank Bey El, known to me to be the Sovereign whose name is subscribed in the within instrument, and acknowledged to me that s/he executed the same. Purpose of jurat is for oath and identification only and cannot be used to indicate entry into any foreign Jurisdiction.

_____
Notary Public in and for said State of New York

My Commission Expires: Nov. 21, 2020

CHERYL ANN MABRY
Notary Public State of New York
Registration No. 01MA6350859
Kings County
Certificate Filed in New York County
My Commission Expires November 21, 20___